IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BILL C. COSTARAS, D.D.S., *et al.*, | ) | CASE NO.  1:05 CV 1827 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| NBC UNIVERSAL, INC., *et al.*, | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion of Defendant NBC Studios, Inc. ("NBC") to Dismiss for Improper Venue, or in the alternative, to Transfer Venue. (ECF #10); the Motion of Defendant Andrew Glassman to Dismiss for Defective Service of Process and Lack of Personal Jurisdiction and Improper Venue, or in the alternative, to Transfer Venue (ECF #12); and the Motion of Krasnow Productions, LLC to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the alternative, to Transfer Venue. (ECF #27).  For the reasons that follow, Defendants' Motions to Transfer Venue are granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Bill Costaras, C. Peter Cimoroni and Alfred LaPonza are citizens and residents of Ohio.  Defendant NBC is a Delaware Corporation with its principal place of business in California. Defendant Andrew Glassman is a citizen and resident of Los Angeles, California and Defendant Krasnow Productions is a California limited liability company with its principal place of business in California.  (ECF #1, paragraphs 1-6).  Plaintiffs filed this diversity action against Defendants alleging

breach of implied-in-fact contract, breach of oral contract, breach of confidence and fraud. All of the claims involve the Defendants' alleged use of Plaintiffs' new ideas, concepts, proposed show format, story lines, casting suggestions and marketing strategies for the "Average Joe" television series and Defendants' failure to pay for or acknowledge Plaintiffs as the source for the new ideas, concepts, show format, story lines, casting or marketing strategies. Plaintiffs seek damages of $10,000,000 on each of the four counts in the Complaint.

## DISCUSSION

In their Motions, Defendants Krasnow Productions and Glassman first move this Court to dismiss the Complaint for lack of personal jurisdiction. These Defendants also join in the Motion of NBC to Dismiss for improper venue, or in the alternative, to transfer venue to the Central District of California. Defendants contend that the action should be dismissed because venue is improper under Fed. R. Civ. P. 12(b)(3), 28 U.S.C. §§ 1393 and 1406(a) because not all the Defendants reside in Ohio and the events allegedly giving rise to Plaintiffs' claims occurred in California, not Ohio. In the absence of dismissal, Defendants request that the action be transferred to the Central District of California for the convenience of the witnesses and parties and in the interest of justice, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

In *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993), the Sixth Circuit addressed the differences between § 1404(a) and § 1406(a). In particular, the *Pittock* court stated:

> The district court's authority to transfer venue is based on two statutes, 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). Section 1404(a) permits a change of venue for the convenience of the parties and witnesses. However, a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants. Section 1406(a) allows a

> district court to grant a change of venue when venue was improper in the original forum. Specifically, section 1406(a) provides that a district court with a case "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Unlike section 1404(a), however, section 1406(a) does not require that the district court have personal jurisdiction over the defendants before transferring the case.

*Id.* at 329 (internal citations omitted). Accordingly, in order to determine whether the use of § 1404(a) or § 1406(a) is the appropriate statutory basis upon which to consider transferring a case, the court must ascertain whether it has personal jurisdiction over the defendants.

In a case that is brought under diversity jurisdiction, the federal court must apply the law of the forum state in examining whether personal jurisdiction exists. *See Nationwide Mut. Ins. v. Tryg Int'l Ins. Co., LTD.*, 91 F.3d 790, 793 (6th Cir. 1996). If a court does not hold an evidentiary hearing regarding whether a defendant is subject to personal jurisdiction in Ohio, the pleadings and affidavits must be considered in a light most favorable to the plaintiff. *See Advanced Polymer Sciences, Inc. v. Phillips Indus. Servs.*, 34 F. Supp. 2d 597, 599 (N.D. Ohio 1999) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). More specifically, in considering a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the court must consider the facts as set forth by the plaintiff as true. *See id.* (citing *Kerry Steel, Inc. v. Paragon Indus. Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). Moreover, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See CompuServe*, 89 F.3d at 1261.

In order to overcome a defendant's assertion of lack of personal jurisdiction, the plaintiff need only set forth a prima facie showing of jurisdiction. *See id.* at 1262. In deciding whether personal jurisdiction exists, a court must engage in a two-part inquiry: (1) the court must determine whether the

3

defendant is encompassed by the state's long-arm statute; and (2) the court must determine whether exercising personal jurisdiction over the defendant satisfies standards of constitutional due process. *See Nationwide*, 91 F.3d at 793.

The first inquiry is whether Defendants Glassman and Krasnow Productions fall within Ohio's long-arm statute. Ohio's long-arm statute is found in Ohio Rev. Code § 2307.282, which states in pertinent part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) contracting to supply services or goods in this state;
>
> (3) causing tortious injury by an act or omission in the state;
>
> (4) causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> \* \* \*
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.
> \* \* \*

Ohio Rev. Code § 2307.382(A)(1)-(4),(6).

Plaintiff relies on the five provisions in Ohio's long-arm statute set forth above to establish the

existence of personal jurisdiction over Defendants.[1] First, Plaintiffs assert that all three Defendants transacted business in Ohio and contracted to supply services or goods in Ohio, satisfying (A)(1) and (A)(2) of the long-arm statute. Specifically, Plaintiffs contend that Defendants transacted business or contracted to supply services or goods in this state by agreeing with Plaintiffs to film the television series at issue in this case in Ohio, by agreeing to allow Plaintiffs to co-produce the show in Ohio with Glassman and Krasnow Productions, by agreeing to permit Plaintiff Costaras to perform cosmetic dentistry for use on the show in Ohio, and by airing, and consenting to the airing of countless other television shows in Ohio over the years. Plaintiffs also contend that Defendants directly, and indirectly, transacted business with advertisers located in Ohio in connection with the "Average Joe" series and other programs they have broadcast in Ohio over the years and have received significant monetary and reputational benefits from them.

While Glassman and Krasnow Productions deny ever agreeing to film Average Joe in Cleveland or to allow Plaintiffs to co-produce in Ohio or elsewhere, all parties agree that any discussions or negotiations between the parties took place in California or Hawaii, and not at any time in Ohio. (ECF #12 at ¶ 23) (ECF #27 at ¶33-34). Plaintiffs' Complaint states that all of Plaintiffs' ideas were presented to NBC, Glassman and/or Krasnow in California.(ECF #1 at ¶30). Moreover, none of the "Average Joe" television series were filmed in Ohio and both Glassman and Krasnow

---

[1] While NBC concedes it may be subject to personal jurisdiction in Ohio, it argues that this Court has no personal jurisdiction over Glassman and Krasnow Productions, making venue inappropriate in this District. Accordingly, the analysis regarding personal jurisdiction will be limited to this Court's exercise of personal jurisdiction over Glassman and Krasnow Productions.

declare that they never agreed to produce, pitch or otherwise work on any television program to be shot, filmed or produced in Ohio. (ECF #12, ¶¶9, 17) (ECF #27 at ¶¶9, 13-14, 26). While NBC has broadcast programs in Ohio, there is no evidence, or even any allegation, that the individual defendants are capable of broadcasting anything. Plaintiffs have failed to offer any law to support a contention that NBC's general commercial activity as a broadcaster, or as the broadcaster of the Average Joe series, in some way permits this Court's exercise of personal jurisdiction over the individual defendants. Neither Glassman nor Krasnow have entered Ohio in over a decade or have engaged in any work of any kind in Ohio. (ECF #12 at ¶24) (ECF #27 at ¶35). Even accepting Plaintiffs' allegations as true, they do not support their contention that Glassman and Krasnow satisfy (A)(1) or (A)(2) of the Ohio long-arm statute.

      Plaintiffs next contend that Glassman and Krasnow's breach of confidence by broadcasting the "Average Joe" series in Ohio without fulfilling their promises to keep it confidential, caused tortious injury to Plaintiffs in Ohio satisfying (A)(3)-(6) of the long-arm statute. Plaintiffs contend the credits broadcast into Ohio misled Ohio residents into believing that Defendants created the ideas and concepts. Further, Plaintiffs allege that Defendants derived substantial advertising revenue from its broadcasts in Ohio and Defendants should and did reasonably expect that residents of Ohio, including Plaintiffs, would be injured as a result of these actions. Again, Plaintiffs seem to be attempting to assert personal jurisdiction over individual defendants based upon the actions of a corporate defendant. NBC broadcast the series at issue into Ohio and derived advertising revenue from the broadcast. Moreover, Plaintiffs have failed to point to a single act or omission that Glassman or Krasnow took in Ohio which caused Plaintiffs' injury as required in (A)(3). Accordingly, Glassman and Krasnow are not subject to

personal jurisdiction under (A)(3) of the long-arm statute.

Even though Plaintiffs combined (A)(3)-(6) for analysis, (A)(4) and (A)(6) are more appropriately joined for analysis as both require the defendant to cause tortious injury in Ohio by an act or omission taken outside Ohio: if he regularly does or solicits business or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state (A)(4); or if the act was committed with the purpose of injuring persons and he reasonably could have expected that some person would be injured thereby in this state (A)(6). Plaintiffs have failed to demonstrate, or even allege, that Defendants Glassman and Krasnow regularly engaged in any persistent course of conduct in Ohio, thus making (A)(4) inapplicable to them. As noted above, the actions of NBC in broadcasting and collecting advertising revenue in Ohio cannot serve as a basis of jurisdiction over individuals. *See Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

Finally, the only arguable basis for permitting jurisdiction over Glassman and Krasnow is pursuant to (A)(6) of the long-arm statute which permits the exercise of personal jurisdiction over a claim arising from an act committed by a person outside of Ohio with the purpose of causing tortious injury to a person in Ohio. Plaintiffs have accused the Defendants of fraud–making misrepresentations with knowledge that the misrepresentations were false with the intention that Plaintiffs should rely on those misrepresentations to their detriment. (ECF #1, ¶¶66-71). Defendants counter that the acts at issue are solely the production and filming of *Average Joe: the Joe Strikes Back*, which were not committed for the purpose of injuring Plaintiffs. However, in the context of this motion, Plaintiffs' Complaint must be read to include their allegations of fraud and misconduct on the part of Defendants

7

during the negotiations and meetings described in the Complaint which resulted, according to Plaintiffs, in injury to Plaintiffs in Ohio.  Thus, the Court finds that Glassman and Krasnow are subject to personal jurisdiction under (A)(6) of Ohio's long-arm statute.  This finding, however, does not end the discussion of whether Glassman and Krasnow are subject to personal jurisdiction in this Court.  The Court must also consider whether jurisdiction is proper under the Due Process Clause of the United States Constitution.

Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445-47, 72 S.Ct. 413, 418-19, 96 L.Ed. 485 (1952), or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir. 1992). The Due Process Clause requires that the exercise of personal jurisdiction in each case comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342-43, 85 L.Ed. 278 (1940)). In broad terms, the assertion of personal jurisdiction satisfies due process if "the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Even a brief review of the Complaint reveals that "general" personal jurisdiction for any

"continuous and systematic" conduct within Ohio does not exist. There are no allegations that Glassman or Krasnow have ever entered Ohio or conducted any kind of business within the State. The allegations all concern their negotiations and alleged entry of an oral contract with the Plaintiffs who happen to be residents of Ohio. Further, one of the ideas allegedly presented to Defendants by Plaintiffs is that the Average Joe series should be produced and filmed in Ohio. These very limited and tangential contacts do not establish the kind of "continuous and systematic" conduct required to support general personal jurisdiction over a defendant. The only on-going contact between Ohio and any of the Defendants would be NBC's continual broadcasts into Ohio. However, as Defendants correctly assert, general jurisdiction of individuals who have not entered Ohio and have no regular dealings with Ohio cannot be based upon jurisdiction of the corporation for whom they work. *See Galloway v. Lorimar Motion Picture Mgmt., Inc*., 55 Ohio App. 3d 78, 562 N.E.2d 949 (Richland Cty. 1989). On these facts, Glassman and Krasnow have not engaged in "continuous and systematic" business in Ohio such as would render them generally amenable to suit in Ohio.

In contrast with general jurisdiction, specific jurisdiction often may be premised on a single act of the defendant. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, 200-01, 2 L.Ed.2d 223 (1957). The nature and quality of the act, as well as the circumstances surrounding its commission, must be examined to determine whether personal jurisdiction exists in each case. *International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159. In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158).

9

The Sixth Circuit established a three-part test that governs whether a defendant is subject to specific personal jurisdiction in Ohio. That three-part test is: (1) whether defendant purposefully availed himself of the privilege of acting in Ohio or causing a consequence in Ohio; (2) whether the cause of action arises out of defendant's activities in Ohio; and (3) whether the exercise of jurisdiction over Defendant is reasonable. *See Nationwide Mut. Ins. v. Tryg Int'l Ins. Co., LTD.*, 91 F.3d 790, 794 (6th Cir. 1996).

The first element of the three-part test requires the Court to determine whether Defendants purposely availed themselves of acting in Ohio or causing a consequence in Ohio. "The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Iron Workers*, 23 F. Supp. 2d at 807 (citing *CompuServe*, 89 F.3d at 1263) (internal quotations omitted)). Thus, the purposeful availment element "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989).

Plaintiffs set forth the following assertions to support specific jurisdiction:

–The causes of action arose in Ohio because Plaintiffs created and refined their ideas, concepts and suggestions in Ohio and Defendants agreed to film the series and allow Plaintiffs to co-produce the series in Ohio and allow Plaintiff Costaras to perform cosmetic dentistry for use in the series.

–defendants broadcasted, or provided consent to broadcast the Average Joe series into Ohio and have improperly received credit for producing and developing the shows.

–defendants have enjoyed to protection of Ohio's laws in connection with the broadcasting of Average Joe into Ohio.

–defendants received significant benefits to their reputations from the support of Ohio residents in connection with the broadcast of the Average Joe in Ohio.

–Ohio has a significant interest in protecting its residents' ideas, concepts, and suggestions and in deterring the misleading of Ohio residents through false credits broadcast into Ohio with the consent of the defendants.

–defendants solicited business, either directly or indirectly, from residents of Ohio, including Plaintiffs, and advertisers provided funding for the Average Joe show.

In situations like this, with an alleged interstate contractual obligation, the Supreme Court has looked to whether the parties created continuing relationships and obligations in determining whether a party has purposely availed itself of the privileges of doing business in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Further, the Court has recognized that the existence of a contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant. *Id.* at 478. Moreover, "[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." *Nationwide*, 91 F.3d at 795 citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In this case, the relationship between the Defendants and Plaintiffs was brief and was limited to the potential creation of one season of the Average Joe series. Even if the parties entered an oral contract, Defendants Glassman and Krasnow never came to Ohio and all negotiations and

conversations took place somewhere else.  It appears that the Plaintiffs approached Defendants with their ideas and suggestions. The most that can be alleged regarding the individual defendants' connection with Ohio is that the Average Joe credits bearing their names were regularly broadcast in Ohio and they may have received some benefit or recognition in that.  Other than a broad allegation that defendants solicited business in Ohio, Plaintiffs have offered no specific examples or facts demonstrating that Glassman and Krasnow solicited any business  in Ohio or took any action to otherwise "purposely avail" themselves of the privileges of doing business in Ohio.

Looking to the second element of the three part test for specific jurisdiction, the Court must determine if the cause of action arises out of defendants' activities in Ohio.  As has been discussed above, Glassman and Krasnow did not undertake any activity in Ohio.  In California, or somewhere outside Ohio, Defendants listened to and discussed Plaintiffs' ideas for the Average Joe series.  In addition, they allegedly entered an oral contract with Plaintiffs in which they purported to permit the Average Joe series to be produced and filmed in Ohio in accordance with Plaintiffs' ideas and suggestions.  While Plaintiffs' causes of action arise out of the interactions between the parties and the representations made and broken between them, none of those interactions took place in Ohio.  Any breach of contract or fraud occurred in California or some place other than Ohio.  Accordingly, the second element has not been satisfied.

Finally, because the Court has determined that Defendants have not purposely availed themselves of the privilege of acting or doing business in Ohio and the causes of action at issue do not arise out of the Defendants' activities in Ohio, it seems obvious that the exercise of jurisdiction over

Defendants would be unreasonable.  In order to find that a plaintiff satisfies the third element of reasonableness, a court must find that exercising personal jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).  Based upon the lack of evidence of any contacts between Glassman and Krasnow and the State of Ohio, the Court finds that the exercise of personal jurisdiction over those Defendants would offend traditional notions of fair play and substantial justice.  Accordingly, the Court does not have general or specific jurisdiction over Glassman and Krasnow.

Moving on to Defendants' motion to dismiss for improper venue, or in the alternative to transfer venue to the Central District of California, the Court will consider whether venue in this district is proper under 28 U.S.C. §§ 1391 and 1406(a).  Venue is proper in a diversity case,  except as otherwise provided by law, only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  Plaintiffs bear the burden of establishing that venue is proper once an objection to venue has been raised, and must demonstrate that venue is proper for each claim asserted in their complaint. *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F.Supp.2d 1039, 1046 (S.D.Ohio 2002) citing *Astor Holdings, Inc. v. Roski,* 2002 WL 72936, *8 (S.D.N.Y. Jan.17, 2002); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3808.

While the personal jurisdiction and venue are two different questions, the Court's earlier analysis regarding personal jurisdiction will be helpful in evaluating whether venue is proper in this

district.  For example, it has already been determined that neither Glassman nor Krasnow is a resident of the Northern District of Ohio.  In addition, neither is subject to personal jurisdiction in the Northern District of Ohio.  Finally, review of the facts adduced regarding personal jurisdiction confirms that this District is not the site of a substantial part of the events or omissions giving rise to the claims at issue.  Accordingly, venue is not proper in this District for Defendants Glassman and Krasnow.

Under 28 U.S.C. § 1406(a) a district court in which is filed a case laying venue in the wrong division or district "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  The decision of whether to dismiss or transfer is within the district court's sound discretion.  *First of Michigan Corp. v. Bramlet,* 141 F.3d 260, 262 (6th Cir.1998).  Unlike section 1404(a) ... section 1406(a) does not require that the district court have personal jurisdiction over the defendants before transferring the case." *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir.1993) (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (utilizing section 1406(a) to transfer a case where there was both improper venue and lack of personal jurisdiction in the transferor forum)).  Thus, Section 1406(a) authorizes the district court to transfer a case to avoid an obstacle to adjudication on the merits due to lack of personal jurisdiction or improper venue.  In situations where venue is proper for one defendant but not for another, the court may transfer the entire case to another district that is proper for both defendants or sever the claims. *Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 296 (3d Cir.1994).

In this case the Court has determined that it does not have personal jurisdiction over Defendants Glassman and Krasnow, thus the options left to the Court would be to dismiss Glassman and Krasnow and go forward with NBC or transfer the entire case to the Central District of California

14

where there would be personal jurisdiction over all of the Defendants. All of the Defendants agree that venue is proper in the Central District of California and Plaintiffs do not dispute that venue would be proper in California. The interests of justice would be served by transferring the entire case to a district where all parties may be joined in one suit rather than in severing the claims.

## CONCLUSION

For the reasons set forth herein, the Motion of Defendant NBC Studios, Inc. to Dismiss for Improper Venue, or in the alternative, to Transfer Venue (ECF #10) is granted in part as this action will be transferred to the United States District Court for the Central District of California. The Motions of Defendant Andrew Glassman to Dismiss for Defective Service of Process and Lack of Personal Jurisdiction and Improper Venue, or in the alternative, to Transfer Venue (ECF #12) and Defendant Krasnow Productions, LLC to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the alternative, to Transfer Venue (ECF #27) are granted in part in that the Court finds that it does not have personal jurisdiction over these Defendants and orders that the case be transferred to the United States District Court for the Central District of California where venue is proper and personal jurisdiction over these Defendants can be obtained.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　/s/*Donald C. Nugent*　　　　　
　　　　　　　　　　　　　　　　　　　　　　　Judge Donald C. Nugent

DATED:   December 15, 2005